# Expert Penologist's Report
# (E. Eugene Miller)
# Medical Report

# For

# John Hanson



# EXPERT PENOLOGIST'S REPORT

# RE

# JOHN HANSON V. MADISON COUNTY DETENTION CENTER, ET AL

Prepared by:

E. Eugene Miller
Washington, D.C.
June 3, 2015

## INTRODUCTION

I have been retained as an expert in the field of penology by Randy A. Byrd, who is an attorney with the Blake R. Maislin law firm and is representing the plaintiff in the case of John Hanson vs. Madison County Detention Center, et al. I was asked to review several documents and a video and determine whether or not the staff of the Warren County Detention Center in Richmond, Kentucky complied with generally accepted practices, principles and standards in the field of penology with regard to a use of force incident involving John Hanson that occurred on February 24, 2013. In conducting my analysis I was asked to assume that the plaintiff's version of those events, which are not shown on videotape, is factually correct.

This is the only written statement of findings and opinions that I have prepared regarding this case. Please note that I respectfully reserve the right to supplement or amend this report, should I receive any additional, relevant information.

## METHODOLOGY

Prior to preparing this report I reviewed:

- The "Complaint";
- " Plaintiff's Second Amended Complaint";
- "Plaintiff's Answer to Defendants' First Set of Interrogatories and Requests for Production of Documents";
- A videotape of the actual incident that occurred on February 24, 2013;
- The deposition of John Hanson;
- 501 KAR 3:010-150;
- American Correctional Association, Core Jail Standards, First Edition;
- American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition;
- American Correctional Association, 2012 Standards Supplement;
- Craig Hemmens and Eugene Atherton, Use of Force: Current Practice and Policy, American Correctional Association.

In preparing this report I have also relied upon my more than fifty (50) years of education, training and experience in the field of adult, institutional corrections. This experience has included: the actual hands-on administration of correctional facilities, including a jail; inspections of/visits to literally hundreds of jails and prisons throughout the United States (including numerous jails in Kentucky) and thirteen (13) foreign countries; and, familiarity with the professional literature in the field. I have also written numerous articles, which have appeared in the principal journals in the field, and am the author of a book, entitled Jail Management. (Please see the enclosed curriculum vitae for details.)

- 2 -

## SUMMARY OF RELEVANT FACTS

John Hanson was brought to the Madison County Detention Center shortly after 1:00 a.m. on the morning of Sunday, February 24, 2013. He was charged with "Disorderly Conduct", stemming from an incident at a local nightspot. He appeared to be intoxicated at the time of admission to the jail.

During the course of the intake process, John Hanson became verbally uncooperative. However, he made no verbal threats against the safety of jail staff nor did he present a physical threat to their safety. However, at a certain juncture in the intake process, staff initiated a use of force.

Subsequently, Mr. Hanson was placed in a restraint chair for approximately three (3) hours. While in the restraint chair, he repeatedly asked to be allowed to use the bathroom. These requests were denied repeatedly and, consequently, Mr. Hanson urinated on himself. Several jail staff teased him about this predicament.

Mr. Hanson also stated that during his stay at the jail he was pepper sprayed and was not decontaminated. However, his deposition testimony is not at all clear on the details.

While he still had pepper spray on his face, Mr. Hanson stated that he was tasered ten (10) times.

Mr. Hanson was released from the jail around noon that same day.

## FINDINGS AND OPINION

The relevant national standard in the field of adult detention states that:

> "The use of physical force is restricted to instances
> of justifiable self-defense, protection of others,
> protection of property, and prevention of escapes,
> and then only as a last resort..."
> (Core Jail Standard #1-CORE-2B-01, pg. 20;
> ACA Standard #4-ALDF-3A-30, pg. 32)

Note: The Kentucky state jail standards do not contain a comparable, specific standard governing the use of force.

An examination of the videotape of this use of force incident revealed that John Hanson had become uncooperative and even argumentative during the course of the intake process. Given his apparent state of intoxication, such conduct is extremely common in jails throughout Kentucky and the nation and occurs hundreds, if not thousands of times, on a nightly basis. Jail staffs routinely are able to calm the individual down without resorting to force and, if necessary, even delay the completion of intake processing until

that occurs. At no time did Mr. Hanson threaten the numerous, assembled jail staff verbally nor did he appear to have presented a physical threat to their safety. The tape does not lie and either Mr. Hanson poses a threat to staff safety at the time of the initiation of the use of force or he does not. It is my opinion, given to a reasonable degree of penological certainty, that John Hanson did not pose a threat to staff at that time.

If Mr. Hanson did not pose a threat to staff, then self-defense was not a justification to use force. Aside from staff, there were no other people present in the immediate vicinity, who could have needed protection. Clearly, Mr. Hanson was not doing anything that could result in damage to the jail's property or equipment. Standing at the booking counter virtually surrounded by jails security staff, he certainly was not a threat to escape. Hence, there was no rational justification for the initial use of force on John Hanson. This is the key element in this entire case, since all other allegations of mistreatment result from this initial, untoward staff action.

In using unjustified force against Mr. Hanson, jail staff violated the above-cited national standards, as well as the generally accepted practice in the field. They also violated the following Kentucky state jail standard:

> "…(a) An employee shall not: …(6) Employ corporal
> punishment or unnecessary physical force…"
> (501 KAR 3:040. Section 7. (2), pg. 1)

After having been subjected to an unjustified use of force, Mr. Hanson naturally struggled to defend himself against further attack. This resulted in his being placed in a restraint chair for approximately three (3) hours. During this time, Mr. Hanson had to urinate and requested to use the bathroom numerous times. His requests were not only denied, but staff teased/taunted him about his predicament. Finally, Mr. Hanson wound up urinating on himself.

The generally accepted practice in the field is for an inmate in a restraint chair to be allowed a bathroom/water break every two (2) hours, unless he is still too violent to do so safely. Relatively few inmates are that violent after two (2) hours in a restraint chair and those that are tend to be seriously mentally ill, not merely intoxicated. Hence, after two (2) hours in the restraint chair, Mr. Hanson should have been afforded the opportunity to go to the toilet. If he had been allowed to do so, he would not have urinated on himself, thus suffering the humiliation that accompanies such an "accident". Thus, the jail staff violated the generally accepted practice in the field by not giving Mr. Hanson a bathroom break after his first two (2) hours in the restraint chair. The staff also violated the following Kentucky state jail standard:

> "…(a) An employee shall not: …(8) Intentionally demean
> or humiliate a prisoner…"
> (501 KAR 3:040. Section 7. (2), pg. 1)

After being released from the restraint chair, at some point Mr. Hanson was pepper sprayed. I do not have sufficient information to determine whether or not the use of the pepper spray was appropriate. However, shortly after this and with pepper spray still on his face, Mr. Hanson stated in his deposition that he was tasered ten (10) times. The taser was deployed in a so-called "dry stun" mode. The use of a taser should only be employed as a last resort on someone, who is either totally out of control or is somehow posing an imminent threat to the safety of himself or others. Even then, due to the potentially serious harmful effects of being tasered, the actual applications of a taser should be extremely limited.

Realistically, if two (2) or at most three (3) applications of a taser do not achieve the desired level of compliance, then it will continue to be ineffective. In other words, if Plan "A" is the use of a taser and the taser is ineffective after two (2) or three (3) applications, then it is time to move on to Plan "B". To do otherwise is to lose focus on achieving a legitimate penological objective in the interest of merely inducing pain. A popular definition of insanity is to keep doing the same thing over and over again and expect a different result. If applying a taser to someone two (2) or three (3) times does not work, it is pointless or virtually insane to keep on trying. The excessive use of a taser on the person of Mr. Hanson again violated the Kentucky state jail standard prohibiting an employee from employing corporal punishment or unnecessary physical force. (Ibid. Section 7. (2) (a) (6), pg. 1)

The foregoing three (3) significant departures from generally accepted practices in the detention field, individually and collectively, also violated the following Kentucky state and national jail standards:

> "… (a) An employee shall not: …(6) Subject a prisoner
> to physical or mental abuse…"
> (Ibid. Section 7. (2) (a) (7),  pg. 1)
>
> "Inmates are not subjected to personal abuse, corporal
> punishment, personal injury, disease, property damage,
> or harassment."
> (Core Jail Standard #1-CORE-6A-06, pg. 54;
> ACA Standard #4-ALDF-6A-07, pg. 100)

- 5 -

Please note that the foregoing identification of three (3) specific violations of generally accepted practices, principles and standards in the field of adult detention does not preclude the possibility that additional improper staff behavior occurred off camera.

**STATEMENT OF COMPENSATION**

Please see the enclosed fee schedule.

E. Eugene Miller                              June 3, 2015