UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

JOHN HANSON,                              )
                                          )
          Plaintiff,                      )
                                          )          No. 5:14-CV-99-REW
v.                                        )
                                          )          OPINION & ORDER
MADISON COUNTY DETENTION                  )
CENTER, et al.,                           )
                                          )
          Defendants.                     )
                          ***  ***  ***  ***

Plaintiff John Hanson, by counsel, moved pursuant to Fed. R. Civ. P. 59(e) and

60(b)(6) to amend the Judgment. DE #164. The Madison County Defendants responded

in opposition, DE #169, as did the Richmond City Defendants. DE #170. Hanson replied.

DE #171. Following the briefing close, Hanson moved for leave to supplement the record

with additional evidence not previously filed. DE ##172, 176. The Madison County

Defendants and the Richmond City Defendants separately responded in opposition. DE

##175, 177. Despite having the opportunity, Plaintiff did not reply. Finally, the Madison

County Defendants separately moved for leave to file a surreply to Hanson's reply in

support of his motion to amend the Judgment. DE #174. Hanson did not respond. All

three motions are now ripe for consideration.

For the following reasons, the Court **GRANTS** the Madison County Defendants

permission to file the substantive surreply (DE #174), **DENIES** Hanson leave to

supplement the record (DE #172), and **DENIES** Hanson's motion to amend the Judgment

(DE #164). For the reasons stated, the briefing warrants the surreply. Hanson does not

offer any justification supporting record supplementation. On the merits of the

1

substantive motion, Hanson, who essentially seeks a de novo run at the dispositive motion process, falls woefully short of warranting relief.

## I.    RELEVANT BACKGROUND

On January 23, 2017, the Court fully granted the Madison County Defendants' motion for summary judgment (DE #127) and denied Plaintiff's motion for summary judgment (DE #130). DE #160 (Memorandum Opinion & Order). The Court simultaneously entered judgment. DE #161. To briefly summarize the factual background (to the extent necessary here), Hanson alleged mistreatment during a brief detention at the Madison County Detention Center (MCDC) following his arrest for disorderly conduct in Richmond, Kentucky. He raised constitutional claims under Fourth (pleaded as Eighth) Amendment excessive force and failure-to-train theories as well as several related state law claims. The Court assumes familiarity with the entire scope of the case, a more detailed recitation of which occurs in DE #160. In the summary judgment Opinion, the Court held that "[v]arious immunity doctrines and legal principles shield each Madison County Defendant from every claim." DE #160, at 2.

In the present substantive motion, Hanson seeks relief from judgment. Specifically, Hanson asks the Court to alter or amend and set the matter for trial "to avoid a grave injustice to Plaintiff and/or provide relief from judgment against him." DE #164-1, at 27. The motion partly rehashes prior arguments and partly endeavors to make novel arguments on a remodeled record. The Court rejects these efforts and stands on its prior rulings. Hanson fails to trigger relief under the taxing rubrics of Rule 59(e) and 60(b)(6).

## II.    MOTION FOR LEAVE TO FILE A SURREPLY

The Court first addresses the Madison County Defendants' motion for leave to file a surreply to Hanson's reply in support of the motion to amend. *See* DE #174 (Motion). Hanson did not respond. The motion is ripe for consideration.

"Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially 'when new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). "[M]any courts have noted" that surreplies "are highly disfavored." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012). Still, the Sixth Circuit reviews a district court's decision whether to grant leave to file a surreply "under the deferential abuse-of-discretion standard." *Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 549 (6th Cir. 2014). A district court abuses its discretion, for example, when it denies permission to file a surreply after a party presents "new arguments and new evidence in [its] reply brief." *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010). Overall, though, "[w]hether to permit a party to file a surreply is a matter left to the trial court's discretion." *Rose v. Liberty Life Ins. Co. of Boston*, No. 3:15-CV-28-DJH-CHL, 2015 WL 10002923, at *1 (W.D. Ky. Oct. 19, 2015).

The Court has fully analyzed the underlying briefing—DE ##164, 169, 170, and 171—as well as the motion for leave to file a surreply—DE #174. The Court, in an exercise of its discretion, finds the Madison County Defendants' proposed surreply

3

appropriate in the circumstances. The Sixth Circuit's focus is whether "new submissions and/or arguments are included in a reply brief." *Key*, 551 F. App'x at 265; *Ashton*, 387 F. App'x at 583. Here, as the Madison County Defendants persuasively claim, Hanson did indeed include new arguments and evidence in DE #171; this justifies a surreply. To briefly summarize, Hanson newly argued that the Court erred in its application of *Scott v. Harris*, 127 S. Ct. 1769 (2007), and its progeny, specifically as to the summary judgment analysis of Hanson's excessive force claims arising from the pepper spray and taser allegations. *Compare* DE #164-1, *with* DE #171. Hanson also newly argued that Defendant Napier provided inconsistent statements as to Napier and Whitaker's involvement in the tasing incident, and he attached new evidentiary submissions allegedly in support. *See* DE ##171-1, 173. Defendants limit the surreply to Hanson's new argument and documents, *see* DE #174-1, at 1 n.1, and appropriately refrain from returning to ground already covered in the underlying motion briefing.

Further, the Madison County Defendants timely filed the motion for leave, greatly diminishing any timing or gamesmanship concerns that may negatively tinge surreply motions. *See Key*, 551 F. App'x at 265 ("[c]onsidering the amount of time that passed between Shelby County's filing of its reply brief and Key's filing of her motion for leave to file a sur-reply" and concluding the district court did not abuse its discretion in denying Key permission to file a surreply given an "unexplained delay of six months in moving for leave to file" it).

For these reasons, the Court **GRANTS** DE #174 and **DIRECTS** the Clerk to file DE #174-1 in the record as a surreply particular to DE #171.

### III.    MOTION FOR LEAVE TO SUPPLEMENT THE RECORD

The Court next addresses Plaintiff's motion, "pursuant to Civ. R. 60(b)(1)," to supplement the record. Hanson seeks to add Defendant Whitaker's recorded interview with the Kentucky State Police and the FBI. DE ##172 (Motion), 176 (Conventional Filing). Plaintiff contends that Whitaker's statements given to the KSP and FBI "completely contradict" his deposition testimony as to tasering of Hanson. *Id.* Per Plaintiff's authoring counsel, Hanson's fourth group of lawyers during the pendency of this suit, this recording was previously available to Plaintiff but not filed during summary judgment briefing. *Id.* ("Plaintff's current attorneys cannot speak as to why Plaintiff's previous attorneys failed to make this recording a part of the record."). Hanson contends the he "should not be penalized for his previous attorneys failing to include the recording in the record." *Id.* Both the Madison County Defendants and Richmond City Third-Party Defendants oppose the motion to supplement. *See* DE ##175, 177.

Under Rule 59(e) and Rule 60(b), it is improper to introduce new evidence that a party simply failed to introduce previously in the case. *See, e.g.*, *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (affirming denial of Rule 59(e) motion when a new affidavit "was, at best, newly *submitted* evidence, not newly *discovered* evidence" (emphases in original)); *Howard v. Magoffin Cnty. Bd. of Educ.*, 830 F. Supp. 2d 308, 319 (E.D. Ky. 2011) (refusing to consider newly submitted, but not newly discovered, evidence); *Jinks v. Allied Signal, Inc.* 250 F.3d 381, 385 (6th Cir. 2001) ("Rule 60(b), however, does not provide relief simply because litigants belatedly present new facts or arguments after the district court has made its final ruling."); *Berger v. Medina Cnty. Ohio Bd. of Cnty. Comm'rs*, No. 1:07CV0367, 2008 WL 926372, at *2–3 (N.D. Ohio

5

Apr. 3, 2008) (denying Rule 60(b) relief when no evidence presented that new materials "were unavailable or unknown"). Here, in seeking to supplement the record, Hanson tenders evidence that he admits was in his possession prior to the entry of judgment. He offers no explanation for the failure to previously place Whitaker's KSP/FBI interview in the record, openly admitting no good cause for counsel's earlier inaction. This is particularly curious because Hanson's lawyers at summary judgment remain counsel of record. *See* DE #130, at 2; DE #172, at 5. Given that the tendered supplementation is clearly not newly discovered under the meaning of Rule 59(e) or 60(b) and, therefore, not properly considered under a motion to alter or amend, the Court **DENIES** DE #172.[1]

## IV.    MOTION TO AMEND JUDGMENT

The Court now addresses Hanson's motion to amend under Rules 59(e) and 60(b)(6). DE #164. The Madison County Defendants and Richmond City Defendants, separately, responded in opposition. DE #169, 170. Hanson replied. DE #170. The Madison County Defendants surreplied. DE #174-1. The matter is ripe for consideration.

Rule 59(e) permits motions, within a certain time limit, "to alter or amend a judgment[.]" "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*,

---

[1] The Court carefully scrutinized n.4 in DE #172. Again, the context is Hanson, without any justification for not timely presenting the evidence, trying to inject new material into the record. Hanson claims in the footnote, evidently to justify supplementation, that the Court, at multiple points, "wrongly cited" Whitaker's and Napier's testimony. That is a serious claim. Thus, the Court reexamined—and verified—each and every citation. Perhaps counsel simply misunderstands CM/ECF pagination, or is following deposition, as opposed to exhibit, numeration. In any event, the Court stands by each and every citation Hanson inaccurately criticized. Finally, the Court notes that Hanson, under oath, like Whitaker in deposition, attributed tasing only to Napier. DE #127-2, Hanson Depo., at 52.

428 F.3d 605, 620 (6th Cir. 2005); *see also Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 346 (6th Cir. 2014). Plaintiff invokes prong (4) here. DE #164-1, at 11 ("This Court should reconsider its Order granting Summary Judgment to defendants to prevent manifest injustice based on the numerous issues of material fact presented below."). Although prong (4) "appears to be a catch-all provision, it is not meant to allow a disappointed litigant to attempt to persuade the Court to change its mind," instead calling for "fact-specific analysis that falls squarely within the discretionary authority of the Court." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 810 (N.D. Ohio 2010). As an important limitation, "manifest injustice does not occur when a losing party attempts to correct what has—in hindsight—turned out to be [a] poor strategic decision." *Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425 (6th Cir. 2017) (quoting *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)) (internal quotation marks omitted). An injustice is manifest only if it is clear and direct in the record; the requisite clarity must show injustice "apparent to the point of being almost indisputable." *Pac. Gas & Elec. Co. v. United States*, 74 Fed.Cl. 779, 785 (2006).

Additionally, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2617 n.5 (2008); *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) ("[U]nder Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued."). "A motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *see also Whitehead*, 301 F. App'x at 489.

Similarly, Rule 60(b) permits a court to "relieve a party . . . from a final judgment" upon proper motion under six enumerated grounds. Fed. R. Civ. P. 60(b). Following five particularized grounds, Rule 60(b)(6), under which Plaintiff proceeds, provides relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). A movant "seeking relief under Rule 60(b)(6) [must] show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 125 S. Ct. 2641, 2649 (2005) (citing *Ackerman v. United States*, 71 S. Ct. 209, 212 (1950)). The Sixth Circuit further requires that a movant show "something more" than one of the five particularized grounds. *East Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011); *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989); *West v. Carpenter*, No. 3:01-cv-91, 2013 WL 5350627, at *2 (E.D. Tenn. Sep. 23, 2013). Hanson, though the movant, spends little time on these standards.

As with Rule 59(e), "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014); *see Jinks v. Allied Signal, Inc.* 250 F.3d 381, 385 (6th Cir. 2001); *see also* Wright & Miller, 11 Federal Practice and Procedure § 2858 (3d ed.) ("A defeated litigant cannot set aside a judgment . . . because the litigant failed to present on a motion for summary judgment all of the facts known to him that might have been useful to the court."). Further, the "grant of relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Id.*

Plaintiff's motion takes one of two tacks: (1) repeating failed summary judgment arguments or (2) presenting new or alternative arguments that he could have raised prior

8

to entry of judgment. Because neither Rule 59(e) nor 60(b) allows a party to relitigate matters or raise earlier available arguments, this is an independent reason to deny the motion *in toto*. *See, e.g.*, *J.B.F. through Stivers v. Kentucky Dep't of Educ.*, No. 16-6316, 2017 WL 2829101, at *1 (6th Cir. June 30, 2017) (motion "exclusively rehashed misguided and failed summary judgment arguments and regurgitated rejected case theories, thus constituting sufficient reason to deny the motion outright[ ]") (internal quotation marks omitted); *Penley v. NPC Int'l, Inc.*, 2014 WL 12634410, at *3 (W.D. Tenn. Dec. 3, 2014) ("NPC's current argument is therefore a fallback position, intermediate stance, or alternative line of reasoning that it could have previously raised but failed to do so. Advancing it now will not satisfy either Rule 59(e) or Rule 60(b).").

After full and plenary briefing, and granular consideration, the Court found against Hanson at the summary judgment stage.  He now seeks to re-tool prior arguments, add substantive evidence to the record (evidence available at the prior briefing), and posit new theories altogether.  The Court has again looked at the original briefing and has studied the original record (including the videos).  The Court affirmatively rejects Hanson's reliance on materials he had in hand but, without explanation, did not use before; that is not the territory of Rule 59(e) or 60(b).  Further, the Court will not allow Hanson to make new arguments in the post-judgment phase.  Litigation has a sequence, and a party cannot exorcise simple dissatisfaction with results through an unjustified do-over.

Alternatively, however, the Court generally analyzes Hanson's assertions on their relative merits:

*First*—Plaintiff argues that, having now filed the various MCDC, state, and national standards on which expert Eugene Miller relied, the Court should find Miller's opinion, and the accompanying standards, sufficient to create "an issue of material fact as to whether the officers' actions were reasonable due to their violation of policy standards set by their own facility . . . to adhere to multiple rules of engagement[.]" DE #164-1, at 14.

Hanson bases this argument on newly filed standards and policies of MCDC, the Commonwealth of Kentucky, and the American Correctional Association. DE ##164-3 (Policies); 164-8 (Notice of Filing of Exhibits); 165 (Conventional Filing). As an initial matter, of course, it is improper to use a Rule 59(e) or Rule 60(b) motion to introduce new evidence that the party simply failed to introduce earlier. *See, e.g.*, *Whitehead*, 301 F. App'x at 489 (affirming denial of Rule 59(e) motion when a new affidavit "was, at best, newly *submitted* evidence, not newly *discovered* evidence" (emphases in original)); *Howard v. Magoffin Cnty. Bd. of Educ.*, 830 F. Supp. 2d 308, 319 (E.D. Ky. 2011) (refusing to consider newly submitted, but not newly discovered, evidence); *Jinks*, 250 F.3d at 387 ("Rule 60(b), however, does not provide relief simply because litigants belatedly present new facts or arguments after the district court has made its final ruling."); *Berger v. Medina Cnty. Ohio Bd. of Cnty. Comm'rs*, No. 1:07-CV-0367, 2008 WL 926372, at *2–3 (N.D. Ohio Apr. 3, 2008) (denying Rule 60(b) relief when no evidence presented that new materials "were unavailable or unknown"). Plaintiff's expert relied on these newly filed standards, absent from the summary judgment record, in preparing his June 3, 2015, report; the documents were clearly available well in advance

of summary judgment briefing. As such, nothing qualifies them as newly discovered evidence properly considered in a Rule 59(e) or Rule 60(b) motion.

The newly filed standards would change none of the Court's previous conclusions. The tendered standards perhaps remedy the difficulties noted in fully evaluating Mr. Miller's opinion testimony. *See* DE #160, at 22 ("Hanson relies primarily on the expert opinion testimony of Eugene Miller. . . . However, Hanson did not attach or file in the record any of the referenced standards. . . . Without the requisite factual basis, Plaintiff's arguments are difficult to process."). However, the Court did not stop there, finding that Plaintiff did not "reference any proper cases or legal standards to support the predicate conclusion that Staggs's failure to adhere to generalized rules of engagement would govern the reasonableness of his actions under the Fourth Amendment and § 1983." *Id.* at 22–23; *see also, e.g.*, *Brown v. Boone County, Ark.*, No. , 2014 WL 4404973, at *5 (W.D. Ark. July 25, 2014) ("Plaintiff seems to suggest that a violation of the Arkansas Jail Standards amounts to a constitutional violation. It does not. Violations of state law or state standards do[ ] not necessarily equate to a constitutional violation."). Attaching the missing standards does not address the error in attempting to judge Defendants' "conduct against broad standards divorced from context [, which] is precisely the type of hindsight review courts must avoid." DE #160, at 23 (citing *Graham v. Connor*, 109 S. Ct. 1865, 1872 (1989)). The *Graham* analysis is case and fact specific; Hanson again asking the Court to judge the reasonableness of Defendants' actions divorced from case particulars is unavailing and garners no post-judgment relief.

Additionally, using the newly filed standards, Hanson again claims that issues of material fact persist regarding his failure-to-train/supervise claim against Madison

County and MCDC. DE #164-1, at 14–17. These arguments are not new and the Court thoroughly rejected them on summary judgment. *See* DE #160, at 32–35. Plaintiff perpetuates earlier arguments that Staggs, Whitaker, and Napier lacked formal training to support the institutional failure-to-train theory of liability. These argument again fail for two reasons.

First, the record does not support the position. Hanson claims that: (1) MCDC never trained Staggs on appropriate use of force, DE #164-1, at 15 (citing DE #164-5 (Staggs Dep.) in which Staggs testified he did not recall if he had completed yearly in-service training prior to Hanson's detention); (2) MCDC never trained Whitaker, *id.* at 16 (citing DE #164-4 (Miller Dep.)); and (3) MCDC never trained Napier on the use of a taser, per Napier's personnel file. *Id.* at 17. However, as the Court noted in the summary judgment order, *see* DE #160, at 23, Staggs submitted an affidavit, with exhibits, verifying that he did receive his in-service training, which included instruction on the proper use of force, prior to the Hanson incident. *See* DE #138-13. Hanson ignores this properly filed affidavit. As to Whitaker, Hanson misrepresents the training record, alleging Whitaker received no training whatsoever. DE #164-1, at 16 ("No training at all is the most severe inadequate training one can received."). However, per Plaintiff's expert's testimony, Whitaker received the state-mandated in-service training as required. *See* DE #164-4, at 158. As to Napier, Plaintiff points to Napier's personnel file to support an assertion that he had no taser use training. However, Hanson does not cite to record evidence, the file itself, in this contention.  Again, the Court can only consider the record before it.

Second, and as importantly, Plaintiff has not demonstrated that the Court erred in applying the failure-to-train standard set out in *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). *See* DE #160, at 33–35 (Court's discussion of *Ellis* factors). Again, the context is record documentation that MCDC deputy jailers attended state-mandated annual in-service training, which includes use of force instruction. *See* DE #127-7 (Whitaker Dep.), at 12–13; DE #138-13 (Staggs Affidavit). The Court previously held that Hanson failed to demonstrate that this required training, and MCDC's compliance with the requirement, amounted to or suggested constitutionally inadequate training. DE #160, at 35. Nothing Plaintiff now points to in the motion to amend changes this assessment. Further, Hanson again fails to show deliberate indifference to inadequate training or supervision. *See id.* (citing *Ellis*, 455 F.3d at 700–01). Again, in the absence of any showing of training inadequacy or MCDC's failure to respond to numerous and repeated complaints of constitutional violations by jailers[2], Hanson failed to show any issue of material fact. Defendants, institutionally and otherwise, were entitled to summary judgment, and Hanson's motion to amend that judgment is unavailing.

*Second*—Plaintiff argues that the Court erred in finding each individual defendant entitled to qualified immunity on the various state law claims. DE #164-1, at 17–18. Plaintiff baldly states that Defendants' "clearly acted in bad faith" because "they had never been trained to act in such a way." *Id.* "When anyone blatantly ignores multiple policies, and training they have, at the very least, acted in bad faith if not maliciously and

---

[2] Of course, again, the Court perceives no predicate constitutional violation, another foundational frailty.

with the intent to harm." *Id.* At the prior dispositive motion iteration, Plaintiff essentially ignored state law immunity as an issue.

Plaintiff's contention here fails. He does not cite any law showing that a failure to follow standards or policies *automatically* constitutes bad faith. Nothing presented here by Plaintiff changes the Court's prior conclusion that the record contains "utterly no indication that the individual defendants willfully or maliciously intended to harm Plaintiff." DE #160, at 40–41 (citing *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 481 (Ky. 2006)). Plaintiff's argument provides no basis for relief.

*Third*—Plaintiff argues that the Court misapplied *Rudlaff v. Gillispie*, 791 F.3d 638 (6th Cir. 2015), in finding no dispute of material fact as to the reasonableness of the force used by Staggs during the initial booking confrontation. DE #164-1, at 18–19

Essentially, Hanson tries to distinguish *Rudlaff*. Plaintiff claims that his version of the incident justifies submission of the excessive force claim to the jury. *Id.* The video tells the story without varnish. Hanson, intoxicated and fresh off his fight at Jerzees, was upset from the moment of entry. Despite being surrounded by authorities, he was profane, belligerent, disputatious, and demanding. He repeatedly interrupted the officers, cursed their performance, and refused instruction. To say he did not slam items on the counter is to ignore the digital proof. He then directly, with the saltiest of talk, contradicted a plain order concerning his verbal posture and physically turned to confront the officer behind him. Staggs acting to quell the matter at that point inarguably squares with *Rudlaff*'s permitted force. It is worth noting that even after the contact, while facing physical interdiction and being told to stop resisting, Hanson continued to volubly and ardently

14

pledge his commitment to resistance. Plaintiff does not convince the Court he is entitled to relief from judgment.[3]

Fourth—Plaintiff argues that the Court failed to identify eleven separate issues of material fact, or otherwise erred in its findings, including Plaintiff's stance when he turned toward Staggs at booking, describing Staggs use of force as "minimal," compliance with MCDC policy, whether Hanson resisted throughout the entire application of force during the booking confrontation, whether the video surveillance refutes Plaintiff's testimony of the pepper spray and tasing incidents, and others. The theories are renewed (but earlier rejected) arguments or new contentions—neither is proper or here availing.

Plaintiff's critiques are broad and wide-ranging, essentially relitigating the summary judgment motion. The Court will not revisit the entire record on a motion to amend. *See Sault Ste. Marie*, 146 F.3d at 374; *Jinks*, 250 F.3d at 385. The Court took considerable care in previously digesting the entire record, particularly the video surveillance, applied the applicable legal standards, and found, on the record then before it, judgment for the County Defendants proper.

The Court does feel compelled to address Hanson's liberties with the record. In a motion where Plaintiff criticizes the Court for "grave mistakes when evaluating the record," DE # 171, at 1, the Reply argument merits mention. Plaintiff sharply changes tack in the Reply, mentioning *Scott v. Harris* for the first time and positing a wholly new

---

[3] One after-the-fact comment made by a fellow jailer upon reviewing the video does not change the reasonableness analysis under *Rudlaff*, in light of the clearly depicted events captured by the surveillance video. *See Rudlaff*, 791 F.3d at 641 (active resistance justifying use of force includes "disobeying officers"). The video clearly show Hanson resisting the commands and direction of the deputy jailers. The Court stands on its prior analysis.

version of events relative to claimed tasing. To be clear, the claim that jail personnel tased Hanson in the first cell is new and directly contradictory to Plaintiff's testimony and prior positions in the case. In the Reply, the lawyers chide the Court as having "wrongly assumed [Hanson] testified that [the tasing] occurred in a shower cell." DE #171, at 3 n.8. Plaintiff tries to inject a new tasing instance into the cell one period—the period when the jailers first took Hanson out of the restraint chair. *Id.* at 3–4 (citing to 2:18:49 to 2:22-2:36:09).

The Court assumed nothing; it followed the proof. In the Second Amended Complaint, Hanson specifically alleged that the tasing happened when he, after the pepper spray, "was then dragged into **another room**." DE #25, at ¶ 17 (emphasis added). There were only two locations depicted on the video. He testified it happened in the room "where they were going to decontaminate me[.]" DE #127-2, at 50–51. In Hanson's initial Rule 59(e) brief, the lawyers explicitly said: "[Hanson] recalls Officer Rawlins and Officer Whitaker pinning Hanson's arms against the wall and Officer Napier repeatedly tasing him in the chest and legs **while in the shower cell**." DE #164-1, at 9 (emphasis added). Creative lawyering is one thing. Taking an established record, with set positions, and conjuring new claims for assessment is quite another. The Court rejects Hanson's efforts to create a fact question related to speculative tasing in cell one. The laundry list of other criticisms fails generally to convince the Court that it erred and fails specifically to show any manifest injustice from the subject Opinion. The Court stands on its prior, extensive analysis.[4]

---

[4] This includes the prior treatment as to Napier, Rawlins, Whitaker, and Staggs, which the Court does not repeat. Plaintiff did not establish a triable fact question as to a

*Fifth*—finally, and only in reply, Plaintiff argues that the Court misapplied *Scott v. Harris*, 127 S. Ct. 1769 (2007), and *Witham v. Intown Suites Louisville Ne., LLC*, 815 F.3d 260 (6th Cir. 2016), in evaluating the surveillance video. As to the *Scott v. Harris* argument, the Court stresses that it did not treat the video as depicting the tasing incident. The video as to the booking confrontation is complete, and the pepper spray incident, in the context of other proof, sufficiently also appears on that objective record.  As to the tasing, the Court's point was (and remains) that the video, the "added wrinkle" *Scott* references, "blatantly contradicted" Hanson's version. The Court will not restate its full prior analysis, but if Hanson claims the tasing occurred at a time and with participants that the video inarguably refutes, then *Scott* counsels the Court against adopting "that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott*, 127 S. Ct. at 1776. The Court persists in its view that Hanson's tale so conflicts with the video and the other proof that a reasonable jury could not credit it; thus, the depiction loses its place as the governing version for purposes of qualified immunity analysis.

Plaintiff seems self-aware on this point: "Hanson's recollection, or lack thereof, of events makes it difficult to rely strictly on the timeline of when he believed certain events in fact occurred or trust that he is not confusing or meshing certain events from different time periods[.]"  DE #164-1, at 9.  A description wholly distinct in time and participants, contrary to the plain video, warrants no deference at the qualified immunity stage.  How could a jury accept Plaintiff's version of the tasing details (to wit, that two officers pinned him to the wall in the shower room while a third repeatedly tased him), when the video shows that the event did not happen anywhere near the time he claimed

---

constitutional violation or clearly established right in the record before the Court, and the new briefing does not alter the prior conclusions.

(seconds after the pepper spraying, which actually occurred at least 7 minutes prior) and could not have happened with the roster of jail officers accused (since Hanson was never in the shower cell with three officers)?  Again, the Court sees no basis for relief post-judgment and persists in its analysis.

This is not a partial contradiction, as discussed, *e.g.*, in *Coble v. White House*, 634 F.3d 865 (6th Cir. 2011). *Coble* dealt specifically with a distinct, audio-only situation where the Court of Appeals found a mere "*lack of* corroborating sound" insufficient to render summary judgment appropriate. 634 F.3d at 869–70 (emphasis added); *see also Toner v. Village of Elkton*, 547 F. App'x 720, 724 (6th Cir. 2013) (characterizing *Coble* as addressing situations with an "absence of corroborating evidence on a recording"). That is wholly different from the situation here, where the Court has viewed video proof that *affirmatively negates* the core of Plaintiff's story. This too is not a case, also unlike *Coble*, where the video merely contradicted a certain specified "part of [Plaintiff]'s testimony[.]" *Coble*, 634 F.3d at 870. Rather, the video as to Hanson fundamentally "discredit[s] his entire version of the events." *Id.*; *cf. Dixon v. Cnty. of Roscommon*, 479 F. App'x 680, 682 (6th Cir. 2012) (per curiam) (affirming denial of summary judgment when the video "neither prove[d] nor disprove[d]" plaintiff's story). While the precise action in the shower room is, indeed, not visible, the fundamentals of Hanson's tale—the "when" and the "who"—simply cannot coexist with the video record. *Cf. Dixon*, 479 F. App'x at 682 (crediting, at the case's procedural point, plaintiff's allegation of off-camera choking, which was possibly consistent with the rest of the record). The Court would gladly accept non-contradicted allegations by Hanson for purposes of summary judgment, as the Sixth Circuit did for Dixon's allegations of choking, but this video

shows beyond peradventure that the tasing Hanson claimed could not have happened as he described. Simply put, here, the "videotape quite clearly contradicts the version of the story told by" Hanson, *Scott*, 127 S. Ct. at 1775—*i.e.*, it "objectively disprove[s]" the basics of his story. *Rowlery v. Genesee Cnty.*, 641 F. App'x 471, 478 (6th Cir. 2016). The Court stands by its prior rejection of "such visible fiction." *Scott*, 127 S. Ct. at 1776.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** the Madison County Defendants permission to file a surreply (DE #174), **DENIES** Hanson leave to supplement the record (DE #172), and **DENIES** Hanson's motion to amend the Judgment (DE #164).

This the 17th day of July, 2017.

Signed By:

**_Robert E. Wier_**

**United States Magistrate Judge**